UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

ANGELA NEW,                                    )
                                               )
                                               )
          Plaintiff,                           )          Civil No. 12-219-ART
                                               )
                                               )
v.                                             )
                                               )
                                               )          **MEMORANDUM OPINION**
CAROLYN W. COLVIN,                             )          **AND ORDER**
*Acting Commissioner of Social Security*,      )
                                               )
                                               )
          Defendant.                           )
                                               )

\*\*\*   \*\*\*   \*\*\*   \*\*\*

The Commissioner of Social Security denied Angela New's application for disability insurance benefits and supplemental security income, and she filed this suit seeking judicial review of that decision. *See* 42 U.S.C. § 405(g). The ALJ's credibility determination was not clear enough to allow the Court to determine whether it was supported by substantial evidence. So, the Court will deny New's motion for summary judgment, deny the Secretary's motion for summary judgment, and remand the case back to the ALJ.

### BACKGROUND

Angela New's breast cancer diagnosis changed her life. Some changes were physical, the result of the bilateral mastectomy and chemotherapy that beat her cancer into remission. R. 7-1 at 757 (Tr. at 752). Those treatments, though successful, left New with lingering pain. *See, e.g.*, *id.* at 688–89 (Tr. at 683–84). Other changes were psychological. New became anxious, depressed, and irritable after her diagnoses, and those conditions persist even after her successful treatment. *Id.* at 100–01, 105–06, 110 (Tr. at 95–96, 100–01, 105). She can

hardly stand to be around others now, and she spends most of her time in her house. *Id.* at 358 (Tr. at 353).

Due to her physical and psychological pain, New felt that she could not work. So, she applied for disability insurance benefits and supplemental security income. *Id.* at 294–307 (Tr. at 289–302). ALJ Christopher B. McNeil denied her application, and the Appeals Council declined review. *Id.* at 6–10, 15–32, (Tr. at 1–5, 10–27). The denial became the final decision of the Commissioner, and New appealed. R. 1.

## THE ALJ'S DECISION

ALJ McNeil applied the traditional five-step analysis for Social Security decisions, *see Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010); 20 C.F.R. § 404.1520, and found as follows. First, New was unemployed. R. 7-1 at 20–21 (Tr. at 15–16). Second, she had "major depressive disorder and panic disorder," which qualified as severe impairments. *Id.* at 21 (Tr. at 16). Her other conditions—"asthma, anemia secondary to breast cancer, chronic pain syndrome, status post motor vehicle accident, and obesity"—were not severe impairments. *Id.* Third, none of her impairments qualified as one of the disabilities listed in 20 C.F.R. Pt. 404, Subpt. B, App'x 1. *Id.* at 24 (Tr. at 19). Fourth, she had the ability to carry out simple instructions, maintain the concentration needed to perform simple tasks for at least two hours, interact with co-workers to complete those tasks, interact with the public occasionally, and adapt to workplace changes so long as she had reasonable support. *Id.* at 24–25 (Tr. at 19–20). Even with those limitations, she could perform some of the jobs she had held in the past. *Id.* at 30 (Tr. at 25). Fifth, and finally, she could also perform other jobs that existed in the national and local economy, such as light and medium cleaning. *Id.* at 31 (Tr. at 26).

## DISCUSSION

This Court reviews an ALJ's decision to determine whether substantial evidence supports the ALJ's conclusions. Substantial evidence is proof that "a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted). An ALJ decision supported by substantial evidence will be upheld "even if substantial evidence would support the opposite conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

New argues that the ALJ's decision should be reversed or remanded for two basic reasons. First, the ALJ improperly weighed the medical evidence on her psychological and physical impairments. Second, the ALJ improperly discounted her credibility.

## I.   The ALJ Properly Weighed the Medical Evidence on New's Psychological Impairments.

New argues that the ALJ improperly weighed the medical evidence on her psychological impairments. R. 11 at 10–13. The ALJ based his findings regarding New's psychological impairments on three pieces of medical evidence and on New's testimony.

- Dr. Teri Caudill, Examining Source:  Dr. Caudill examined New in the spring of 2009. R. 7-1 at 525 (Tr. at 520). She reported that New was appropriately dressed, showed good hygiene, was alert and focused, and thought in logical and goal-oriented terms. *Id.* New told Dr. Caudill that she had suffered from anxiety since her early 20s. *Id.* at 526 (Tr. at 521). New had only two close friends, argued with others frequently, and felt anxious in crowds. *Id.* at 527 (Tr. at 522). She drove once a week at most, was scared of public transportation, dusted her home, and managed her own money. *Id.* at 528 (Tr. at 523). New said that she usually woke up at 11:00 a.m., watched TV for six hours and played cards, and went to bed between 7:00 p.m. and 8:00 p.m. *Id.* Dr. Caudill concluded that New had a panic disorder and a major depressive disorder. *Id.* at 529 (Tr. at 524). New's prognosis was "fair." *Id.* She had a "good" ability to complete simple tasks, a "mildly to moderately impaired" ability to complete complex tasks, a "moderately impaired" ability to make judgments, a "mildly to moderately

impaired" ability to interact with others, and a "moderately impaired" ability to respond to work-related stress. *Id.* at 530 (Tr. at 525).

- Dr. Thor Tangvald, Treatment Records: Dr. Tangvald treated New for almost two years. R. 7-1 at 610–16, 732–43 (Tr. at 605–11, 727–38). His records indicate that New suffers from depression and anxiety. *See id.* Her stream of thought was consistently normal throughout her visits, and she was also consistently alert and oriented. *See id.*

- Dr. Terry R. Schwartz, Nonexamining Source: Dr. Schwartz reviewed the medical evidence and testified at the hearing. R. 7-1 at 726–30 (Tr. at 721–25). He found that New had mild restrictions in daily living, mild to moderate restrictions in social functioning, and mild to moderate restrictions in maintaining concentration, persistence, or pace. *Id.* at 727 (tr. at 722). He based his conclusions on the report from Dr. Caudill and the records from Dr. Tangvald. *Id.* He found that New could work in a job that did not require interaction with the public or work at a fast pace with a quota. *Id.* at 730 (Tr. at 725).

- New's Statements and Testimony: New testified that she could not prepare her own meals, could not complete household chores, that she needed help to complete day-to-day tasks, and left the house only for doctors' appointments. R. 7-1 at 357–59 (Tr. at 352–54). She reported having trouble with her memory, concentration, task completion, and understanding instructions. *Id.* at 360 (Tr. at 355). Finally, she had been fired from a job for fighting with another employee, was unable to handle stress, and was unable to handle change. *Id.* at 361 (Tr. at 356).

Based on this evidence, the ALJ found that New could carry out simple instructions, complete simple tasks for at least two hours at a time, interact with coworkers and supervisors as needed, interact with the public occasionally, and adapt to changes with reasonable support. *Id.* at 24–25 (Tr. at 19–20). New argues that the ALJ improperly weighed the evidence for three reasons, none of which are persuasive.

First, New argues that the ALJ ignored Dr. Caudill's finding that New's global assessment of functioning (GAF) score was fifty. R. 11 at 11. A GAF score of fifty is on the high end of a range that indicates "serious impairment in social, occupational, or school functioning." *See* R. 14-1 at 4 (setting out a range of 50 to 41). However, there is no "statutory, regulatory, or other authority requiring the ALJ to put stock in a GAF score."

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 511 (6th Cir. 2006) (citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)).  That is because a GAF score is simply "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning."  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (internal quotation marks and citation omitted).  In other words, New's GAF score was not evidence of a specific limitation that the ALJ should have included in his findings.  *See* R. 7-1 at 26 (Tr. at 21) (offering this explanation for the decision not to consider the GAP score).  For that reason, the ALJ's decision not to rely on the score provides no reason to question his findings.

Second, New faults the ALJ for relying on Dr. Schwartz's opinions, which she argues are "extremely vague" and "not at all supported by the evidence."  R. 11 at 12.  Her basic complaint—that Dr. Schwartz relied only on the records from Dr. Caudill and Dr. Tangvald—is wrong on two levels.  First, Dr. Schwartz reviewed all of the medical exhibits in the record as of the date of his testimony.  *See* R. 7-1 at 93, 726 (Tr. at 88, 721).  The medical exhibits added after his testimony relate to New's cancer treatment, not her psychological treatment.  *See id.* at 93 (Tr. at 88) (stating he had received the records through Exhibit 20F); *id.* at 744–71 (Tr. at 739–66) (exhibits 21F through 24F).  And, second, Dr. Schwartz rightly focused on the records from Dr. Caudill and Dr. Tangvald because New did not submit other clinical records about her psychological impairments.  *See Wilson v. Comm'r of Soc. Sec.*, 280 F. App'x 456, 459 (6th Cir. 2008) (explaining that a *claimant* must develop the record in support of her claim of disability because she bears the burden of proving disability).

Third, New criticizes an inference that the ALJ drew from Dr. Tangvald's treatment records. Dr. Tangvald reported that New had missed more appointments than she had made. R. 7-1 at 741 (Tr. at 736). And he recommended that New schedule follow up visits between one and six months apart. *Id.* at 610–16, 732–43 (Tr. at 605–11, 727–38). The ALJ concluded that the "conservative" nature of New's treatments belied her complaints of disabling depression and anxiety. *Id.* at 27 (Tr. at 22). An ALJ must consider "any explanations . . . that may explain infrequent or irregular medical visits." Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *7 (July 2, 1996). At the hearing, New explained that she could not afford medical treatment as she lacks health insurance. R. 7-1 at 78 (Tr. at 73). The ALJ countered this by pointing out that New spent money on her smoking habit. *Id.* at 27 (Tr. at 22). New correctly responds that there is no evidence about the cost of her smoking habit in the record; for example, a friend or family member could have supplied her with cigarettes. R. 11 at 15–16; *see also McKnight v. Sullivan*, 927 F.2d 241, 242 n.1 (6th Cir. 1990) (calling into question the presumption that a smoking habit indicates an ability to afford basic medical care).

But the ALJ's error in referencing New's smoking habit was harmless here. New thinks the ALJ should have assumed that Dr. Tangvald's treatment records were colored by his knowledge that New lacked insurance—in other words, that he recommended infrequent follow-up appointments because he knew she could not afford more frequent ones. R. 11 at 12. But the evidence does not support this inference. New lost her health insurance in mid-2009. *See* R. 7-1 at 78 (Tr. at 73). Dr. Tangvald's treatment records from October 2008 to May 2009, when she had health insurance, are similar to her records from July 2009 until July 2010, when she did not. Compare *id.* at 610–16 (Tr. at 605–11), *with id.* at 732–43 (Tr.

6

at 727–38).  In both sets of records, Dr. Tangvald recommends follow-up appointments one to six months apart.  And in both sets of records, he describes her as alert and functioning normally.  Thus, there is no reason to believe that Dr. Tangvald thought New's symptoms merited aggressive psychological treatment but kept quiet due to her financial situation.

The ALJ reviewed the medical evidence, took into account New's statements and testimony, "provid[ed New] with the benefit of the doubt," and made findings on her psychological limitations.  *Id.* at 21, 24–25 (Tr. at 16, 19–20).  New has not provided a reason to doubt the ALJ's decisions about how to weigh the medical evidence.

## II.    The Court Cannot Determine Whether Substantial Evidence Supports the ALJ's Findings on New's Physical Impairments.

New argues that the ALJ improperly discounted her credibility when finding that her chronic-pain related physical impairments did not impact her ability to work.  R. 11 at 14–19.  An ALJ's credibility determination, while deserving of great deference, must be supported by substantial evidence.  *See Rogers*, 486 F.3d at 247.  Some of the ALJ's reasons for discounting New's credibility were not supported by substantial evidence, so the question becomes whether those errors were harmless.  *See Ulman*, 693 F.3d at 714.  To answer that question, this Court would normally assess whether, leaving the erroneous reasons aside, substantial evidence still supports the ALJ's credibility finding.  This Court cannot do that because the ALJ's credibility finding, or the actual weight he gave to New's reports and testimony, was unclear.  *See Rogers*, 486 F.3d at 248 (explaining an ALJ's credibility determination must clearly state "the weight the adjudicator gave to the individual's statements and the reasons for that weight").  So, the Court must remand the case back to the ALJ for more specific credibility findings.

The ALJ made two findings related to New's chronic pain, one explicit and one implicit. The explicit finding was that New's chronic pain did not qualify as a severe impairment. R. 7-1 at 21 (Tr. at 16). The implicit finding is that New's chronic pain did not limit her ability to work in any way. *Id.* at 24 (Tr. at 19) (finding that New could "perform a full range of work at all exertional levels").

The ALJ found that New's chronic pain was not severe because it did not meet the twelve-month durational requirement and did not interfere with her ability to work. *Id.* at 22–23 (Tr. at 17–18); *see also* 20 C.F.R. § 404.1509 (imposing a twelve-month durational requirement for severe impairments). At the hearing before the ALJ, New claimed that her chronic pain was a result or lingering effect of her breast cancer treatments and reconstructive surgery. R. 7-1 at 101–03 (Tr. at 96–98). The ALJ pointed to three pieces of evidence to counter that claim. First, in August 2009, immediately after her reconstructive surgery, New's pain was minimal. *Id.* at 745 (Tr. at 740) (noting that New "complains of some pain but otherwise no complaints"). Second, in April and May 2009, when New visited the hospital after a car accident and after an asthma attack, she did not claim to be in severe pain. *Id.* at 617–21 (Tr. at 612–16). Third, although New's oncologist diagnosed her with chronic pain from August 2009 until August 2010, her treatment was conservative. *Id.* at 688–95 (Tr. at 683–90). For these reasons, the ALJ concluded that New's chronic pain did not meet the durational requirement or "interfere with [her] ability to engage in basic work-related activities." *Id.* at 23 (Tr. at 18).

The ALJ then found that New's chronic pain did not limit her ability to work at all, in part because he found that New's description of her pain was not credible. *See id.* at 26–29 (Tr. at 21–24). The ALJ based his credibility finding on two types of inconsistencies in

New's statements and testimony, internal inconsistencies and inconsistencies with the medical evidence.

- Internally Inconsistent Statements: New testified that she developed anxiety only after her cancer diagnosis, but she told Dr. Caudill that she had been anxious since her 20s. *Id.* at 28 (Tr. at 23).  New reported that she could lift only five pounds, then reported that she could lift twenty pounds, and then reported that she could not lift a gallon of milk. *Id.*; *see also id.* at 393 (Tr. at 388)  New claimed to have disabling asthma, but did not report asthma on her initial application for benefits. *Id.* at 28 (Tr. at 23).

- Statements Inconsistent With the Medical Record:  New missed more appointments than she made with her psychologist. *Id.* at 26–27 (Tr. at 21–22).  New claimed she was unable to care for herself, but she told Dr. Caudill that she could bathe, watch TV, dust her home, manage her own funds, and play cards. *Id.* at 27 (Tr. at 22). New cancelled a doctor's appointment because she felt ill from chemotherapy that morning but had actually had chemotherapy a few days earlier. *Id.* at 28 (Tr. at 23).  New claimed she did not do household chores, but she once sought treatment for poison ivy after working in her yard. *Id.* at 27 (Tr. at 22).

The ALJ also noted that New's reports on her daily activities could not "be objectively verified with any reasonable degree of certainty." *Id.*  Peggy Carmack, the friend who takes care of New on a daily basis, submitted a report of New's daily activities.  The ALJ found that Carmack was "not impartial" because she was New's friend and that her report was inconsistent with the "objective evidence." *Id.* at 28 (Tr. at 23).  Finally, the ALJ stated that the medical records did not contain any quantification or analysis of New's pain that could corroborate her claims.[1]  *Id.* at 23–24 (Tr. at 18–19) (relying on the testimony of Dr. Robert B. Sklaroff).

---

[1] New argues that the ALJ mischaracterized Dr. Sklaroff's testimony.  She believes that he testified that he could not determine the extent of her pain from the medical records.  R. 11 at 13–14.  That, of course, is perfectly consistent with the ALJ's description of Dr. Sklaroff's testimony.  New's real complaint is that the ALJ drew the opposite conclusion from Dr. Sklaroff's testimony (no medical evidence supports New's claims) from the one she would prefer (no medical evidence contradicts New's claims).  While medical evidence is not required to substantiate a claimant's description of her pain, the lack of such evidence is relevant to a claimant's credibility.  *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986) (explaining that medical evidence of pain is not required); Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *3

Two of the ALJ's reasons for discounting New's complaints are not supported by substantial evidence.  First, New testified (and the medical records confirm) that her pain treatment was conservative in part because she could not afford to go to a pain specialist. *See id.* at 64, 694 (Tr. at 59, 689).  The ALJ thought that New's smoking habit undermined her claim of financial hardship.  But, as explained above, that inference is both unsound and not supported by evidence in the record.  There is no evidence in the record stating that New paid for her own cigarettes. *See McKnight*, 927 F.2d at 242 n.1.  While New likely paid for her own cigarettes, the Court cannot assume that she did without evidence.  Moreover, New's doctor specifically stated that he wanted her to receive more aggressive pain treatment but did not send her to a pain specialist because she did not have medical insurance.  R. 7-1 at 694 (Tr. at 689).  Second, the ALJ found that New's complaints of pain were not credible because she denied having pain in August of 2010.  However, the cited exhibit states that New denied having "bone pain" but still suffered from "chronic pain." *Id.* at 23, 688–89 (Tr. at 18, 683–84).

Normally, the Court would analyze whether those errors were harmless.  If an ALJ's credibility determination is supported by substantial evidence, then any error by the ALJ in reaching that determination is harmless. *See Ulman*, 693 F.3d at 714.  The harmless error analysis proceeds in two steps:  1) what was the ALJ's credibility finding, and 2) leaving the problematic reasoning aside, did the rest of the ALJ's reasons support that finding?

The Court cannot conduct the harmless error analysis because the ALJ's decision does not clearly state what weight the ALJ gave to New's reports and testimony.  The

---

(July 2, 1996) (explaining that the level of treatment an individual has received to control her pain is relevant to the credibility determination).

decision says that New's complaints of pain are not credible, but it does not say to what degree the ALJ discounted her complaints. Did the ALJ give New's complaints of pain no weight at all? *See* R. 7-1 at 28 (Tr. at 23) (concluding that "the claimant's symptomology are not nearly as limiting as she has alleged"). Or did he give her complaints some weight, but find that even with pain she could still engage in a full range of normal work activities? *See id.* (stating that the claimant "was not entirely credible"); *id.* at 29 (Tr. at 24) (finding that "the claimant's statements were only partially credible"). This Court cannot say. This case demonstrates why an ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248 (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *4 (internal quotation marks omitted)). Without a specific credibility determination, this Court cannot conduct "meaningful appellate review." *Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985). The ALJ's equivocating statements about New's credibility prevent this Court from being able to analyze whether the errors in the ALJ's credibility determination were harmless.[2]

For that reason, the case must be remanded back to the ALJ. On remand, the ALJ must clearly state what weight he gave to New's description of her pain and its effects on her ability to perform normal work activities. He must also specifically state the reasons for his conclusion. Finally, if his credibility determination changes on remand, he must state

___

[2] The Secretary appears to argue that any error in the residual functional capacity stage is irrelevant because the ALJ correctly determined that New's physical pain was not severe, meaning it did not interfere with her ability to work. R. 14 at 13–15. There are two problems with this argument. First, some of the identified errors in the ALJ's credibility analysis were made in the section of the decision where the ALJ found New's pain syndrome non-severe. R. 7-1 at 23 (Tr. at 18). So, they call into question that portion of the ALJ's analysis as well. Second, the ALJ specifically addressed New's pain in the residual functional capacity section of his decision. *Id.* at 25–26, 28 (Tr. at 20–21, 23).

whether that change affects his residual functional capacity finding.  And, if so, he must repeat steps four and five of the disability determination.  Accordingly, it is **ORDERED** that:

(1)     The plaintiff's motion for summary judgment, R. 11, is **DENIED**.

(2)     The defendant's motion for summary judgment, R. 14, is **DENIED**.

(3)     Pursuant to 42 U.S.C. § 405(g), this matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Memorandum Opinion and Order.

This the 13th day of August, 2013.

Signed By:

_Amul R. Thapar_ AT

United States District Judge

12